FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
6/19/2020 10:58 AM
KATHLEEN VIGIL CLERK OF THE COURT
Corinne Onate

**FIRST JUDICIAL DISTRICT COURT**
**COUNTY OF SANTA FE**
**STATE OF NEW MEXICO**

**SNOOKY RILEY and**
**JENNIFER DILALLO,**

      **Plaintiffs,**

v.

**MARY SPANGLER, in her individual capacity;**
**JASON BACA, in his individual**
**capacity; CHRISTY VIGIL, in her individual**
**capacity; DENISE GONZALES, in her**
**individual capacity; VICTOR ALDAZ in**
**his individual capacity; VINCENT VIGIL,**
**in his individual capacity; LEON MARTINEZ,**
**in his individual capacity; JOHN GAY, in his individual capacity;**
**ALISHA TAFOYA LUCERO, in her individual capacity;**
**STATE OF NEW MEXICO and its subsidiary entities;**
**NEW MEXICO CORRECTIONS DEPT.; and WESTERN**
**NEW MEXICO CORRECTIONAL FACILITY,**

      **Defendants.**

No.   **D-101-CV-2020-01303**

**Case assigned to Wilson, Matthew Justin**

## COMPLAINT FOR VIOLATIONS OF CIVIL RIGHTS

Plaintiffs Snooky Riley and Jennifer DiLallo bring this complaint under 42 U.S.C.

Section 1983 and the New Mexico Tort Claims Act for damages resulting from the deprivation

of their civil rights under the Fourth and Fourteenth Amendments to the United States and from

negligent maintenance of a building.

1

## PARTIES

1.      Plaintiff Snooky Riley[1] is, and was at all material times, incarcerated at Western New Mexico Correctional Facility ("WNMCF"), a facility run by the New Mexico Corrections Department ("NMCD") in Grants, New Mexico.

2.      Plaintiff Jennifer DiLallo is, and was at all material times, incarcerated at WNMCF, an NMCD facility.

3.      Defendant Mary Spangler is, and was at all material times, a Corrections Officer employed by WNMCF, an NMCD facility.

4.      Defendant Jason Baca was at all material times a Unit Manager employed by WNMCF, an NMCD facility.

5.      Defendant Christy Vigil ("Defendant C. Vigil") was at all material times a Grievance Officer and Disciplinary Officer employed by WNMCF, an NMCD facility.

6.      Defendant Denise Gonzales is, and was at all material times, a Disciplinary Officer employed by WNMCF, an NMCD facility.

7.      Defendant Lieutenant Victor Aldaz is, and was at all material times, the Prison Rape Elimination Act ("PREA") Compliance Manager for WNMCF, an NMCD facility.

8.      Defendant Vincent Vigil ("Defendant V. Vigil") was at all material times the Deputy Warden at WNMCF, an NMCD facility.

9.      Defendant Leon Martinez was at all material times the warden of WNMCF, an NMCD facility.

10.     Defendant John Gay is, and was at all material times, the Director of Adult Prisons Division, an NMCD division.

---

[1] Ms. Riley was convicted under the name Anne Apodaca, which is the name that appears on her formal New Mexico Corrections Department paperwork.

EXHIBIT "A"

11.     Defendant Alisha Tafoya Lucero is, and was at all material times, the Cabinet Secretary for the New Mexico Corrections Department.

12.     Defendant New Mexico Corrections Department is a government entity which at all material times employed Defendants Spangler, Baca, C. Vigil, Gonzales, Aldaz, V. Vigil, Martinez, Gay, and Tafoya Lucero and which oversees the WNMCF.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over the subject matter and parties to this action because New Mexico district courts are courts of general jurisdiction and have original jurisdiction in all matters and causes which are not listed as exceptions in the New Mexico Constitution. N.M. Const. art. VI, § 13.

14.     Venue is proper in the County of Santa Fe because Defendants WNMCF and NMCD are state entities with their headquarters and principal place of business in Santa Fe.

## COMMON FACTUAL ALLEGATIONS

15.     Both Plaintiffs were at all times relevant incarcerated at WNMCF.

16.     Both Plaintiffs were subjected to at least one strip search by Defendant Spangler that they believed went beyond a corrections officer's scope of duty and which they believed violated NMCD policy and/or the Prison Rape Elimination Act ("PREA").

17.     The primary purpose of NMCD's search policy, CD-130300, is to control the introduction of contraband, reduce contraband, dispose of contraband, and detect hazards.

18.     Upon information and belief, inmates are subjected to routine strip searches prior to and after visitation.

19.     CD-130300 states that the policy shall be made available to inmates.

3

20.    Despite the language of the policy, the cover page of the policy indicates that it will not be shared with inmates or the public.

21.    Plaintiffs had therefore not been allowed to view or familiarize themselves with actual NMCD policy regarding proper strip search procedure prior to the events at issue in this Complaint.

22.    There was no way for Plaintiffs to know for certain whether Defendant Spangler's strip searches were in violation of CD-130300 or not.

23.    However, Plaintiffs did know that the strip searches at issue in this lawsuit deviated from what they had come to understand as normal during their many years at WNMCF.

24.    Plaintiffs filed good-faith grievances regarding Defendant Spangler's strip searches because the searches appeared to be intentionally more invasive and humiliating than the strip searches to which Plaintiffs had previously been subjected.

25.    Upon information and belief, Defendant Spangler had already been investigated several times previously for violating PREA.

26.    In fact, between August 2017 and April 2019, there were at least eight (8) complaints reported against Defendant Spangler regarding violations of PREA.

27.    Plaintiffs' grievances, and those of other inmates who complained about inappropriate strip searches, triggered an investigation by the Office of Professional Standards ("OPS") conducted by Officer Randy Dorman and approved by Tasha Yazzie-Chase.

28.    NMCD policy CD-131800 establishes that OPS oversees investigations into alleged NMCD employee misconduct.

29.    At the end of an OPS investigation, the OPS investigator compiles a written investigative report ("OPS report").

EXHIBIT "A"

30.     In this case, Officer Dorman was selected by OPS to investigate the allegations against Defendant Spangler and other corrections officers. He compiled his findings in the OPS report for case file #18-0609.

31.     Upon information and belief, Officer Dorman's conclusions within the OPS report constitute a final agency decision on the merits of Plaintiffs' grievances.

32.     PREA regulations require agencies to issue a final agency decision on the merits of a grievance alleging sexual assault within 90 days or up to 160 days if 90 is insufficient to issue a decision. *See* 28 CFR § 115.51.

33.     160 business days, excluding major holidays, after Plaintiff Riley's first grievance was April 5, 2019.

34.     160 business days, excluding major holidays, after Plaintiff DiLallo's first grievance was May 26, 2019.

35.     Officer Dorman submitted a draft of the OPS report for approval by OPS on May 21, 2019.

36.     Ms. Yazzie-Chase approved the OPS report on June 19, 2019.

37.     Defendant Aldaz received the final OPS report on June 21, 2019.

38.     In the OPS report, Defendant Dorman determined that all of the allegations of inmates who had experienced what they believed to be inappropriate strip searches, including Plaintiffs' allegations, were unfounded.

39.     Under the PREA regulations, "unfounded" means that the incident was investigated and determined never to have occurred, whereas "unsubstantiated" means there was insufficient evidence to determine whether the incident occurred. *See* 28 CFR § 115.5.

EXHIBIT "A"

40.     Officer Dorman's determination that Plaintiffs' allegations were "unfounded" contradicts the Investigative Summary on page 33 of the OPS report,[2] which states that "it is determined that *insufficient evidence exists* to support the deduction that" the accused parties committed "any Code of Ethics violations along with any PREA violations." (emphasis added).

41.     Upon information and belief, in the OPS report, Officer Dorman came to a generalized conclusion about Plaintiffs' credibility based on doubts raised as to the credibility of one apparently unnamed inmate who was involved in the investigation.

42.     Filing a false PREA complaint/ statement is listed as a Category "A" major offense alongside rape, murder, arson, and other felonies per NMCD Policy CD-090101.

43.     On June 24, 2019, each Plaintiff was charged with the A(44) major offense of "making a false PREA complaint/ statement."

44.     Disciplinary action against inmates begins with a formal written charge of misconduct filed by an NMCD staff member against an inmate, known as an Inmate Misconduct Report.

45.     Defendant Aldaz filed Inmate Misconduct Reports against both Plaintiffs.

46.     The Inmate Misconduct Reports for each Plaintiff stated that Plaintiffs' allegations were characterized as unfounded and that "insufficient evidence exist[ed]" that PREA was violated.

47.     Each Plaintiff was disciplined with the deprivation the maximum allowable number of good time credits for the offense and the loss of privileges.

48.     Additionally, Plaintiffs lost the status of having "clear conduct," which resulted in other deprivations.

---

[2] Plaintiffs' counsel was able to obtain several pages of the OPS report in question through an Inspection of Public Records Act request to the New Mexico Department of Public Safety in September 2019.

EXHIBIT "A"

49.     The recent Revised Settlement Agreement in the Duran consent decree case, which was negotiated between inmate class members and NMCD, recognized that inmates are often punished for reporting sexual assault.

50.     The Agreement, approved by a Federal judge on February 14, 2020, reaffirmed the need to protect inmates from retaliation for reporting sexual assault.

51.     Specifically, the Revised Settlement Agreement states that "NMCD will not take away good time or otherwise discipline class members for reporting in good faith alleged PREA violations, as provided by PREA Standard 28 C.F.R.115.78(f)."

## INDIVIDUAL FACTUAL ALLEGATIONS

### I.     Plaintiff Snooky Riley

#### a.   Strip Search

52.     On October 10, 2018, Defendant Spangler conducted a strip search of Plaintiff Riley prior to a scheduled visit.

53.     At first, the strip search followed the NMCD strip search guidelines with which Plaintiff Riley was familiar.

54.     The search deviated, however, when Defendant Spangler told Plaintiff Riley to part her labia with her hands.

55.     In nearly thirty years of incarceration, Plaintiff Riley had never been asked to part her labia during a strip search.

56.     Plaintiff Riley complied with Defendant Spangler's directives during the strip search.

57.     Defendant Spangler's strip search of Plaintiff Riley was inappropriate, dehumanizing, and unsanitary.

EXHIBIT "A"

58.     After the search, Plaintiff Riley sought clarification on the current strip search policy from Officer Colleen Etcitty.

59.     Officer Etcitty told Plaintiff Riley that the strip search policy is closed to inmates.

60.     On October 22, 2018, Plaintiff Riley filed a series of informal grievances regarding the strip search conducted by Defendant Spangler.

61.     Plaintiff Riley's primary purpose in filing informal grievances was to get clarification on the policy so she and her peers would know what to expect and could mentally prepare themselves for the humiliation and degradation inherent in strip searches.

**b. Retaliation and Due Process Violations**

62.     Prior to the incidents at issue in this case, Plaintiff Riley had a record of clear conduct for over 13 years and had never been charged with a major level offense.

63.     On June 24, 2019, Plaintiff Riley was charged with the A(44) major level offense of making a false PREA allegation/ statement related to the strip search she experienced in October 2018.

64.     Defendant Baca began an investigation into Plaintiff Riley's A(44) charge at 8:00 AM on June 24, 2019.

65.     Defendant Baca completed his investigation into Plaintiff Riley's A(44) charge by 9:21 AM on June 24, 2019.

66.     Defendant Baca was Plaintiff Riley's Unit Manager at the time Plaintiff Riley submitted her grievances and when he later acted as her disciplinary hearing officer.

67.     On June 25, 2019, eight months after she had filed her original grievance, Plaintiff Riley received the Inmate Misconduct Report from Defendant Aldaz, alerting her to the fact that

8

EXHIBIT "A"

she had been charged with false reporting based on the conclusion in the OPS report that Defendants Spangler and Etcitty did not violate PREA or the Code of Ethics.

68.     Plaintiff Riley's disciplinary hearing was scheduled for July 1, 2019 at 10:20 AM.

69.     On July 1, Defendant Gonzales offered Plaintiff Riley a plea of 180 days loss of good time with no loss of privileges.

70.     Plaintiff Riley refused to plead guilty.

71.     Defendant Gonzales then threatened Plaintiff Riley, telling her that if she refused to take the plea, she would be found guilty, get all of her good time revoked, be put in segregation for a month, and that she would lose all of her privileges for a year, including visitation and access to technology.

72.     Defendant Gonzales also told Plaintiff Riley that when found guilty, she would lose her job as a peer educator with the New Mexico Peer Education Program, in collaboration with Project ECHO, where she organized workshops in harm reduction to empower fellow inmates.

73.     Plaintiff Riley replied "thank you, ma'am" to Defendant Gonzales and then asked to view the evidence against her.

74.     Defendant Gonzales refused to show Plaintiff Riley any evidence and told her that the only way she could get documents was through a habeas corpus petition.

75.     At that time, Plaintiff Riley requested a continuance of the hearing so she could prepare remarks in her own defense, despite not knowing or being able to view the evidence being used against her.

76.     Defendant Gonzales scheduled the hearing to continue on July 8 after 8:00 AM.

77.     Plaintiff Riley's full disciplinary hearing, which was audio recorded, took place on July 9, 2019.

9

EXHIBIT "A"

78.   At the disciplinary hearing, Plaintiff Riley indicated that she wanted to call witnesses.

79.   *Plaintiff Riley was not permitted to call her desired witnesses.*

80.   The Disciplinary Officer's Investigation Report completed by Defendant Baca incorrectly states that when asked whether she wanted to call witnesses, Plaintiff Riley said no.

81.   At the disciplinary hearing, Plaintiff Riley asked Defendant Baca, in his role as hearing officer, if the OPS report mentioned anything about her specifically that would sustain the A(44) charge.

82.   Defendant Baca did not answer.

83.   At the disciplinary hearing, Defendant Baca presented no evidence or summary of evidence against Plaintiff Riley.

84.   Defendant Baca's Disciplinary Hearing Summary of Evidence and Procedures issued on July 9, 2019 contained no evidence or summary of evidence against Plaintiff Riley.

85.   The Disciplinary Hearing Summary of Evidence and Procedures did contain what appears to be a transcript or summary of Plaintiff Riley's verbal statement during the hearing.

86.   The audio recording of Plaintiff Riley's hearing, however, reveals that Defendant Baca omitted select portions of her testimony from his summary.

87.   For example, in his account of Plaintiff Riley's verbal statement, Defendant Baca omitted Plaintiff Riley's testimony about having been raped prior to the enactment of PREA and the emotional impact of that experience.

88.   On July 9, 2019, Plaintiff Riley was found guilty of the A(44) charge based on the "employee's written Misconduct Report," the Disciplinary Officer's Investigation Report, and "the preponderance of the evidence."

10

89.     Upon information and belief, the "employee's written Misconduct Report" refers to the Inmate Misconduct Report submitted by Defendant Aldaz.

90.     The Disciplinary Officer's Investigation Report contained no evidence or summary of evidence against Plaintiff Riley.

91.     At no time was any evidence or summary of evidence on which the A(44) charge was based presented to Plaintiff Riley, in violation of NMCD policy. *See* NMCD Policy CD-090101 (stating that evidence must be presented at a disciplinary hearing or, if the evidence is confidential, a summary of that evidence must be presented).

92.     On July 15, 2019, Plaintiff Riley appealed the finding of guilt for the A(44) charge.

93.     On July 19, 2019, Defendant Martinez upheld the finding of guilt and the sanction of 180 days forfeiture of good time and loss of privileges, including the loss of income from Project ECHO.

94.     On July 22, 2019, Plaintiff Riley appealed Defendant Martinez's decision upholding the finding of guilt and sanctions to NMCD headquarters in Santa Fe.

95.     On July 23, 2019, Defendant Tafoya Lucero denied Plaintiff Riley's appeal.

96.     Plaintiff Riley exhausted all administrative remedies when she followed the appeals process to the highest authority.

97.     Plaintiff Riley was sanctioned with the forfeiture of the maximum allowable good time credits and the loss of privileges, including access to makeup, arts and crafts, and clubs.

98.     Plaintiff Riley continued and continues to work for Project ECHO without pay because she believes in the important peer education work she performs for the Project.

**II.      Plaintiff Jennifer DiLallo**

     **a.   Strip Search**

99.     On August 16, 2018, Plaintiff DiLallo was preparing for a visit with her daughter, who had driven to WNMCF from New York specifically to visit her mother.

100.    Defendant Spangler and Corrections Officer Maas conducted a strip search of Plaintiff DiLallo before she was permitted to see her daughter.

101.    During the strip search, Defendant Spangler told Plaintiff DiLallo to bend over with her head to the toilet, spread her buttocks, and cough three times.

102.    Plaintiff DiLallo complied.

103.    Defendant Spangler then bent down with her face and flashlight so close to Plaintiff DiLallo's exposed genitals that Plaintiff DiLallo could feel the heat of the flashlight on her flesh.

104.    Defendant Spangler then told Plaintiff DiLallo to again spread her buttocks and cough three times.

105.    Defendant Spangler then told Plaintiff DiLallo to spread her labia with her hands.

106.    Plaintiff DiLallo complied.

107.    In a clear violation of NMCD policy, which requires a top-down approach to strip searches, Defendant Spangler then told Plaintiff DiLallo to place her finger in her mouth and move it around her gum line after having touched her genitalia.

108.    Plaintiff DiLallo refused to proceed without washing her hands.

109.    Defendant Spangler replied that there was no soap and again ordered Plaintiff DiLallo to place her finger in her mouth around her gum line.

110.    Plaintiff DiLallo again refused to proceed without washing her hands.

111.    Defendant Spangler told Plaintiff DiLallo that she would not be allowed to see her daughter if she did not comply.

EXHIBIT "A"

112.    Plaintiff DiLallo desperately wanted to see her family, who had traveled a long way to visit her, so she placed her unwashed fingers in her mouth and complied with Defendant Spangler's directive.

113.    Corrections Officer Maas silently stood by throughout the encounter.

114.    Plaintiff DiLallo had received countless routine strip searches throughout her incarceration and had never experienced a corrections officer putting their head or flashlight so close to her exposed genitals, nor had she ever been told to repeat the process of spreading her buttocks and coughing or been asked to spread her labia.

115.    During all past routine strip searches, Plaintiff DiLallo had never been told to touch her mouth and gums after touching her genitals without washing her hands.

116.    Defendant Spangler's strip search of Plaintiff DiLallo was inappropriate, dehumanizing, unsanitary, and contrary to NMCD Strip Search Policy, CD-130301 which states that strip searches should be conducted from the top down.

117.    Defendant Spangler's strip search made Plaintiff DiLallo feel violated, confused, humiliated, and unclean.

118.    Defendant Spangler's strip search of Plaintiff DiLallo went beyond the scope of a corrections officer's duty and violated NMCD strip search policy.

119.    Plaintiff DiLallo did not immediately report the strip search because she was afraid that she would be retaliated against.

120.    However, on December 6, 2018, after she heard other women say that the same thing had happened to them, Plaintiff DiLallo filed a notarized, sworn statement regarding the August 16 strip search by Defendant Spangler.

EXHIBIT "A"

121.    On December 12, 2018, Plaintiff DiLallo filed an informal grievance regarding the same matter.

122.    On December 26, 2018, Ms. DiLallo was notified that the matter had been referred to OPS.

**b. Retaliation and Due Process Violation**

123.    On June 24, 2019, six (6) months after her original grievance, Defendant Aldaz wrote an Inmate Misconduct Report charging Plaintiff DiLallo with the A(44) major level offense of making a false PREA allegation/ statement.

124.    On June 26, 2019, Defendant C. Vigil conducted an investigation into Plaintiff DiLallo's Inmate Misconduct Report and determined that the "preponderance of the evidence" warranted a hearing.

125.    The hearing was scheduled for July 1, 2019 after 8:00 AM.

126.    Defendant C. Vigil told Plaintiff DiLallo that if she did not waive her right to the hearing she would be found guilty and would lose all her privileges for a year including phone privileges and visitation.

127.    Losing privileges would also mean that Plaintiff DiLallo would not be allowed to have her yarn for crocheting.

128.    Plaintiff DiLallo has Asperger's Syndrome and uses crocheting as a therapeutic activity to help sustain her mental wellbeing throughout her incarceration.

129.    Crocheting is an important coping mechanism for Plaintiff DiLallo and, in her words, "keeps her sane."

130.    Afraid of losing her yarn and access to her family, Plaintiff DiLallo felt she had no choice but to waive her right to appear at the hearing and her right to call witnesses.

14

131.    On June 27, 2019, a disciplinary hearing was held in absentia and Defendant Gonzales found Plaintiff DiLallo guilty of the A(44) offense.

132.    With the finding of guilt, Defendant Gonzales issued a Disciplinary Hearing Summary of Evidence and Proceedings stating that her decision to find Plaintiff DiLallo guilty was based on the "employee's written Misconduct Report," the Disciplinary Officer's Investigation Report, and the OPS investigation.

133.    Upon information and belief, the "employee's written Misconduct Report" refers to the Inmate Misconduct Report submitted by Defendant Aldaz.

134.    The Inmate Misconduct Report for Plaintiff DiLallo mentioned her "allegation against Officer Mary Spangler and Jessica Urbina," even though Plaintiff DiLallo had never made an allegation or filed a grievance against Officer Urbina, who was not on duty at the time of the strip search at issue.

135.    The Disciplinary Officer's Investigation Report contained no evidence or summary of evidence against Plaintiff DiLallo.

136.    The Disciplinary Hearing Summary of Evidence and Proceedings contained no evidence or summary of evidence against Plaintiff DiLallo.

137.    At no time was any evidence or summary of evidence on which the A(44) charge was based presented to Plaintiff DiLallo, in violation of NMCD Policy CD-090101.

138.    Plaintiff DiLallo submitted an appeal to Defendant C. Vigil.

139.    Defendant C. Vigil told Plaintiff DiLallo that Defendant C. Vigil had submitted her appeal on June 27, 2019.

140.    Plaintiff DiLallo never received a decision on her appeal.

EXHIBIT "A"

141.    Plaintiff DiLallo exhausted her administrative remedies when she submitted her

appeal, which she was not able to further appeal because she never received a decision.

142.    Plaintiff DiLallo was sanctioned with the forfeiture of the maximum allowable good

time credits and the loss of privileges, including ability to purchase arts and crafts and to

participate in clubs.

<u>**CLAIMS ON BEHALF OF PLAINTIFF SNOOKY RILEY**</u>

**COUNT I: FOURTH AMENDMENT VIOLATION**
**(Against Defendant Spangler)**

143.    Plaintiff Riley incorporates by reference all preceding paragraphs as though they were

stated fully herein.

144.    At all material times, Plaintiff Riley had the right to be free from unreasonable

searches and seizures under the Fourth Amendment to the United States Constitution.

145.    The institution's security interest in controlling the introduction of contraband and

reducing contraband within the facility is low in circumstances prior to visitation.

146.    Defendant Spangler's strip search of Plaintiff Riley prior to visitation was

unreasonable because the need to preserve Plaintiff Riley's bodily integrity outweighed the

institution's security needs at that time.

147.    The justification for initiating Plaintiff Riley's strip search before her visit was

unreasonable because there is no risk to the institution of smuggling contraband while going *into*

a family visit.

148.    If anything, such a risk is presented *after* a visit with people from outside the

institution, who may have brought contraband intended to enter the facility.

149.    Defendant Spangler conducted the strip search in an unreasonable manner when she

unnecessarily made Plaintiff Riley spread her labia.

16

150.     Plaintiff Riley suffered, and continues to suffer, damages as a result of Defendant's conduct.

151.     Defendant Spangler violated Plaintiff Riley's Fourth Amendment rights when she conducted an unreasonable and invasive strip search of Plaintiff Riley before a visit.

152.     Defendant Spangler's actions were knowing, intentional, malicious, sadistic, willful, wanton, and in gross disregard of Plaintiff Riley's constitutional rights.

### COUNT II: RETALIATION IN VIOLATION OF THE FIRST AMENDMENT
(Against Defendants Aldaz, Baca, C. Vigil, Gonzales, Martinez, and Tafoya Lucero)

153.     Plaintiff Riley incorporates by reference all preceding paragraphs as though they were stated fully herein.

154.     Defendants violated Plaintiff Riley's First Amendment rights when they retaliated against her for filing grievances in good faith alleging sexual misconduct during strip searches.

155.     Defendants retaliated against Plaintiff Riley by:

    a.   charging her with a major-level offense for submitting good-faith grievances;

    b.   attempting to coerce her into pleading guilty to filing a false PREA report;

    c.   revoking 180 days of earned good time credits;

    d.   taking away her privileges, including the ability to do paid work with Project ECHO;

    e.   denying her appeals; and

    f.   other retaliatory acts and omissions.

156.     Plaintiff Riley engaged in constitutionally protected conduct when she filed grievances regarding Defendant Spangler's strip search.

17

EXHIBIT "A"

157. The forfeiture of the maximum allowable good time credits and loss of privileges adversely impacts Plaintiff Riley's ability to submit future grievances for fear that she will face similar sanctions when filing a grievance.

158. Defendants' desire to retaliate against Plaintiff Riley motivated the disciplinary action against her.

159. The adverse action against Plaintiff Riley would not have taken place without Defendants' desire to retaliate against her.

160. Upon information and belief, Officer Dorman made no specific or individualized inquiry into Plaintiff Riley's allegations, instead coming to generalized conclusions about a number of women at WNMCF.

161. Upon information and belief, Officer Dorman did not make an inquiry into Plaintiff Riley's motivation or state of mind when she filed grievances regarding a strip search they thought was inappropriate.

162. Upon information and belief, Defendant Aldaz did not make any inquiry into Plaintiff Riley's state of mind or reasons for filing her grievance when he decided to charge her with knowingly making a false report.

163. In other words, Defendants made no inquiry into whether Plaintiff Riley submitted her grievances in bad faith, a question which is independent from the question of whether the strip searches in question violated NMCD policy or PREA.

164. Each Defendant involved in disciplining Plaintiff Riley violated her First Amendment rights by retaliating against her for filing a grievance in good faith.

165. Defendants' retaliation was unlawful and would chill an ordinary person in the exercise of their First Amendment rights.

18

EXHIBIT "A"

166.    Defendant Baca's actions were knowing, intentional, malicious, sadistic, willful, wanton, and in gross disregard of Plaintiff Riley's constitutional rights.

167.    Defendant C. Vigil's actions were knowing, intentional, malicious, sadistic, willful, wanton, and in gross disregard of Plaintiff Riley's constitutional rights.

168.    Defendant Gonzales' actions were knowing, intentional, malicious, sadistic, willful, wanton, and in gross disregard of Plaintiff Riley's constitutional rights.

169.    Defendant Aldaz's actions were knowing, intentional, malicious, sadistic, willful, wanton, and in gross disregard of Plaintiff Riley's constitutional rights.

170.    Defendant Martinez's actions were knowing, intentional, malicious, sadistic, willful, wanton, and in gross disregard of Plaintiff Riley's constitutional rights.

171.    Defendant Tafoya Lucero's actions were knowing, intentional, malicious, sadistic, willful, wanton, and in gross disregard of Plaintiff Riley's constitutional rights.

### COUNT III: FOURTEENTH AMENDMENT DUE PROCESS VIOLATION
#### (Against Defendants Aldaz, Gonzales, Baca, Martinez, Gay, and Tafoya Lucero)

172.    Plaintiff Riley incorporates by reference all preceding paragraphs as though they were stated fully herein.

173.    The deprivation of good time credits affects the duration of Plaintiff Riley's sentence because earned meritorious good time and history of clear conduct are factors considered by the parole board for individuals serving sentences of 30 years to life.

174.    Revocation of Plaintiff Riley's good time credits and clear conduct status therefore may impact her eligibility for parole when she goes before the parole board in June 2021.

175.    Incarcerated people have a constitutionally protected liberty interest in earned good time credits that cannot be revoked without due process.

EXHIBIT "A"

176.    At a minimum, Plaintiff Riley was entitled to notice of the charges, a statement of the evidence relied on and reason for disciplinary action, the ability to call witnesses, and an impartial decision-maker.

177.    Defendants violated Plaintiff Riley's due process rights when they revoked Plaintiff Riley's earned good time credits without following proper procedures.

178.    Defendants failed to provide a written statement by the factfinders of the evidence relied on for the A(44) charge against Plaintiff Riley.

179.    Even if the evidence against Plaintiff Riley was confidential, Defendants failed to provide a written statement summarizing the evidence relied on for the A(44) charge against Plaintiff Riley.

180.    Defendant Baca refused to even tell Plaintiff Riley whether the allegedly confidential OPS report contained evidence specifically against her.

181.    Defendants failed to provide an adequate written statement outlining the reasons for disciplinary action against Plaintiff Riley.

182.    Defendant Baca refused to allow Plaintiff Riley to call her desired witnesses at the disciplinary hearing on July 9, 2019.

183.    The testimony of Plaintiff Riley's desired witnesses would not have been unduly hazardous to the institution.

184.    Defendant Baca was not an impartial decision-maker with regard to the finding of guilt and disciplinary action against Plaintiff Riley because he was her Unit Manager at the time and Plaintiff Riley submitted the original grievances regarding Defendant Spangler's strip searches to Defendant Baca.

EXHIBIT "A"

185.   Defendants failed to present any evidence or summary of evidence at any time against Plaintiff Riley to sustain the A(44) charge.

186.   Defendant Aldaz violated Plaintiff Riley's due process rights when he charged her with false reporting after she filed grievances in good faith.

187.   Defendant Gonzales violated Plaintiff Riley's due process rights when she attempted to coerce Plaintiff Riley into accepting a guilty plea.

188.   Defendant Baca violated Plaintiff Riley's due process rights when he improperly conducted a hearing, found her guilty based on evidence which he refused to show or summarize to Plaintiff Riley, and recommended serious discipline.

189.   Defendant Martinez violated Plaintiff Riley's due process rights when he approved and upheld the forfeiture of good time credits without due process of law.

190.   Defendants Gay and Tafoya Lucero violated Plaintiff Riley's due process rights when they denied her appeals.

191.   Defendant Baca's actions were knowing, intentional, malicious, sadistic, willful, wanton, and in gross disregard of Plaintiff Riley's constitutional rights.

192.   Defendant C. Vigil's actions were knowing, intentional, malicious, sadistic, willful, wanton, and in gross disregard of Plaintiff Riley's constitutional rights.

193.   Defendant Gonzales' actions were knowing, intentional, malicious, sadistic, willful, wanton, and in gross disregard of Plaintiff Riley's constitutional rights.

194.   Defendant Aldaz's actions were knowing, intentional, malicious, sadistic, willful, wanton, and in gross disregard of Plaintiff Riley's constitutional rights.

195.   Defendant Martinez's actions were knowing, intentional, malicious, sadistic, willful, wanton, and in gross disregard of Plaintiff Riley's constitutional rights.

EXHIBIT "A"

196.    Defendant Gay's actions were knowing, intentional, malicious, sadistic, willful,

wanton, and in gross disregard of Plaintiff Riley's constitutional rights.

197.    Defendant Tafoya Lucero's actions were knowing, intentional, malicious, sadistic,

willful, wanton, and in gross disregard of Plaintiff Riley's constitutional rights.

### COUNT IV: CIVIL RIGHTS VIOLATIONS- CRUEL AND UNUSUAL PUNISHMENT
### (Against Defendant Spangler)

198.    Plaintiff Riley adopts and incorporates the preceding paragraphs as though fully set

forth herein.

199.    By and through the actions described above, Defendant Spangler violated Plaintiff

Riley's Eighth Amendment right to be free from cruel and unusual punishment.

200.    Specifically, Defendant Spangler violated Plaintiff Riley's right to be afforded a

reasonable degree of safety from degrading searches and to be secure in their bodily integrity.

201.    The actions of Defendant Spangler in coercing Plaintiff Riley to perform degrading acts

and violating her clearly established constitutional rights were conducted in a manner that was

objectively unreasonable, intentional, willful, and wanton, and done in gross disregard of

Plaintiff Riley's rights.

202.    Defendant Spangler's unlawful lawful and degrading search of Plaintiff Riley

amounting to degrading sexual abuse in violation of Plaintiff Riley's bodily integrity and right to

personal security, and the ongoing threat of further such violations, proximately caused Plaintiff

Riley to suffer damages.

203.    These damages include lost liberty and psychological and emotional distress.

### COUNT V: NEGLIGENT OPERATION OR MAINTENANCE OF A PUBLIC FACILITY
### (Against all Defendants)

22

204. Plaintiff Riley adopts and incorporates the preceding paragraphs as though fully set forth herein.

205. Defendants owed a duty to Plaintiff Riley to protect her health and safety in the operation and maintenance of WNMCF.

206. Defendants breached their duty, as set forth above, by failing to ensure that Plaintiff Riley was housed in a facility where she would not be subject to harassment and retaliation by WNMCF employees.

207. The negligent conduct of Defendants constitutes negligent operation or maintenance of a public facility for which immunity is waived pursuant to NMSA 1978, § 41-4-6 as against Defendants, including the State of New Mexico, New Mexico Corrections Department, and WNMCF.

208. Defendants failed to ensure that inmates like Plaintiff Riley could make PREA complaints without fear of retaliation.

209. The negligence of all Defendants caused Plaintiff Riley to suffer damages.

### CLAIMS ON BEHALF OF PLAINTIFF JENNIFER DILALLO

#### COUNT VI: FOURTH AMENDMENT VIOLATION
#### (Against Defendant Spangler)

210. Plaintiff DiLallo incorporates by reference all preceding paragraphs as though they were stated fully herein.

211. At all material times, Plaintiff DiLallo had the right to be free from unreasonable searches and seizures under the Fourth Amendment to the United States Constitution.

212. The institution's security interest in controlling the introduction of contraband and reducing contraband within the facility is low in circumstances prior to visitation.

23

213.    Defendant Spangler's strip search of Plaintiff DiLallo prior to her family visit was unreasonable because the need to preserve Plaintiff DiLallo's bodily integrity outweighed the institution's security needs at that time.

214.    The justification for initiating Plaintiff DiLallo's strip search before her visit was unreasonable because there is no risk to the institution of smuggling contraband while going *into* a family visit.

215.    *If anything, such a risk is presented after a visit with people from outside the* institution, who might bring contraband intended to enter the facility.

216.    Defendant Spangler conducted the strip search in an unreasonable manner when she

     a.   unnecessarily made Plaintiff DiLallo repeat degrading acts;

     b.   placed her face and flashlight unnecessarily and inappropriately close to Plaintiff DiLallo's genitals;

     c.   required Plaintiff DiLallo to spread her labia; and

     d.   forced Plaintiff DiLallo to touch her mouth and gums after touching her genitals without allowing Plaintiff DiLallo to wash her hands, in direct violation of NMCD Policy CD-130300.

217.    Defendant Spangler violated Plaintiff DiLallo's Fourth Amendment rights when she conducted an unreasonable, invasive, and unsanitary strip search of Plaintiff DiLallo before a family visit.

218.    Defendant Spangler's actions were knowing, intentional, malicious, sadistic, willful, wanton, and in gross disregard of Plaintiff DiLallo's constitutional rights.

219.    Plaintiff DiLallo suffered, and continues to suffer, damages as a result of Defendant Spangler's conduct, including lasting emotional distress.

24

EXHIBIT "A"

## COUNT VII: RETALIATION IN VIOLATION OF THE FIRST AMENDMENT
### (Against Defendants Aldaz, C. Vigil, Gonzales, and Martinez)

220.   Plaintiff DiLallo incorporates by reference all preceding paragraphs as though they were stated fully herein.

221.   Defendants retaliated against Plaintiff DiLallo for filing a grievance in good faith alleging sexual misconduct during strip searches.

222.   Defendants retaliated against Plaintiff DiLallo by:

    a.   charging her with a major-level offense for submitting a good-faith grievance;

    b.   coercing her into waiving her right to appear at the disciplinary hearing and to call witnesses;

    c.   revoking 180 days of earned good time credits;

    d.   taking away her privileges, including the ability to purchase yarn for her knitting;

    e.   improperly submitting or failing to submit her appeal to NMCD central office in Santa Fe; and

    f.   other retaliatory acts and omissions.

223.   Plaintiff DiLallo engaged in constitutionally protected conduct when she filed grievances regarding Defendant Spangler's strip search.

224.   The revocation of good time credits and loss of privileges adversely impacts Plaintiff DiLallo's ability to submit future grievances for fear that she will face similar sanctions when filing a grievance.

225.   Defendants' desire to retaliate against Plaintiff DiLallo motivated the disciplinary action against her.

226.   The adverse action against Plaintiff DiLallo would not have taken place without Defendants' desire to retaliate against her.

EXHIBIT "A"

227.   Defendants' retaliation was unlawful and would chill an ordinary person in the exercise of their First Amendment rights.

228.   Upon information and belief, Officer Dorman made no specific or individualized inquiry into Plaintiff Riley's allegations, instead coming to generalized conclusions about a number of women at WNMCF.

229.   Upon information and belief, Officer Dorman did not make an inquiry into Plaintiff DiLallo's motivation or state of mind when she filed grievances regarding a strip search she thought was inappropriate.

230.   Upon information and belief, Defendant Aldaz did not make any inquiry into Plaintiff DiLallo's state of mind or reasons for filing her grievance when he decided to charge her with knowingly making a false report.

231.   In other words, Defendants made no inquiry into whether Plaintiff DiLallo submitted her grievances in bad faith, a question which is independent from the question of whether the strip searches in question violated NMCD policy or PREA.

232.   Each Defendant involved in disciplining Plaintiff Riley violated her First Amendment rights by retaliating against her for filing a grievance in good faith.

233.   Defendant C. Vigil's actions were knowing, intentional, malicious, sadistic, willful, wanton, and in gross disregard of Plaintiff DiLallo's constitutional rights.

234.   Defendant Gonzales' actions were knowing, intentional, malicious, sadistic, willful, wanton, and in gross disregard of Plaintiff DiLallo's constitutional rights.

235.   Defendant Aldaz's actions were knowing, intentional, malicious, sadistic, willful, wanton, and in gross disregard of Plaintiff DiLallo's constitutional rights.

EXHIBIT "A"

236. Defendant Martinez's actions were knowing, intentional, malicious, sadistic, willful, wanton, and in gross disregard of Plaintiff Riley's constitutional rights.

**COUNT VIII: FOURTEENTH AMENDMENT DUE PROCESS VIOLATION**
**(Against Defendants Aldaz, C. Vigil, Gonzales, Martinez, Gay, and Tafoya Lucero)**

237. Plaintiff DiLallo incorporates by reference all preceding paragraphs as though they were stated fully herein.

238. The unlawful deprivation of Plaintiff DiLallo's rightfully-earned good time credits affected the duration of her sentence.

239. Incarcerated people have a constitutionally protected liberty interest in earned good time credits that cannot be revoked without due process.

240. At a minimum, Plaintiff DiLallo was entitled to notice of the charges, a statement of the evidence relied on and reason for disciplinary action, the ability to call witnesses, and an impartial decision-maker.

241. Defendants violated Plaintiff DiLallo's due process rights when they revoked 180 days of her earned good time credits without following proper procedures.

242. Defendant C. Vigil violated Plaintiff DiLallo's rights when she coerced Plaintiff DiLallo into waiving her right to appear at the disciplinary hearing and to call witnesses by threatening to take away all of her privileges, including family visitation.

243. Defendants failed to provide a written statement by the factfinders of the evidence relied on for the A(44) charge against Plaintiff DiLallo.

244. Even if the alleged evidence against Plaintiff DiLallo was confidential, Defendants failed to provide a written statement summarizing the evidence relied on for the A(44) charge against Plaintiff DiLallo.

EXHIBIT "A"

245.     Defendants failed to provide an adequate written statement outlining the reasons for disciplinary action against Plaintiff DiLallo.

246.     Defendant C. Vigil violated Plaintiff DiLallo's due process rights with regard to the finding of guilt and disciplinary action against Plaintiff DiLallo when she:

> a.   coerced Plaintiff DiLallo into waiving her right to appear at the disciplinary hearing and to call witnesses; and
>
> b.   told Plaintiff DiLallo she would be found guilty before the disciplinary hearing.

247.     Defendants failed to present any evidence or summary of evidence at any time against Plaintiff DiLallo to sustain the A(44) charge.

248.     Defendant Aldaz violated Plaintiff DiLallo's due process rights when he charged her with false reporting after she filed a grievance in good faith.

249.     Defendant C. Vigil violated Plaintiff DiLallo's due process rights when she coerced her into waiving her right to appear at the disciplinary hearing and call witnesses.

250.     Defendant Gonzales violated Plaintiff DiLallo's due process rights when she found her guilty based on alleged evidence which she did not show or summarize to Plaintiff DiLallo and when she recommended serious discipline.

251.     Defendants Martinez and Gay violated Plaintiff DiLallo's due process rights when they approved and upheld the forfeiture of good time credits without due process of law.

252.     Defendant Baca's actions were knowing, intentional, malicious, sadistic, willful, wanton, and in gross disregard of Plaintiff DiLallo's constitutional rights.

253.     Defendant C. Vigil's actions were knowing, intentional, malicious, sadistic, willful, wanton, and in gross disregard of Plaintiff DiLallo's constitutional rights.

254.    Defendant Gonzales' actions were knowing, intentional, malicious, sadistic, willful, wanton, and in gross disregard of Plaintiff DiLallo's constitutional rights.

255.    Defendant Aldaz's actions were knowing, intentional, malicious, sadistic, willful, wanton, and in gross disregard of Plaintiff DiLallo's constitutional rights.

256.    Defendant Martinez's actions were knowing, intentional, malicious, sadistic, willful, wanton, and in gross disregard of Plaintiff DiLallo's constitutional rights.

257.    Defendant Gay's actions were knowing, intentional, malicious, sadistic, willful, wanton, and in gross disregard of Plaintiff DiLallo's constitutional rights.

258.    Defendant Tafoya Lucero's actions were knowing, intentional, malicious, sadistic, willful, wanton, and in gross disregard of Plaintiff DiLallo's constitutional rights.

### COUNT IX: CIVIL RIGHTS VIOLATIONS- CRUEL AND UNUSUAL PUNISHMENT
### (Against Defendant Spangler)

259.    Plaintiff DiLallo adopts and incorporates the preceding paragraphs as though fully set forth herein.

260.    By and through the actions described above, Defendant Spangler violated Plaintiff DiLallo's Eighth Amendment right to be free from cruel and unusual punishment.

261.    Specifically, Defendant Spangler violated Plaintiff DiLallo's rights afforded a reasonable degree of safety from degrading searches and to be secure in her bodily integrity.

262.    The actions of Defendant Spangler in coercing Plaintiff DiLallo to perform degrading and unsanitary acts and violating her clearly established constitutional rights were conducted in a manner that was objectively unreasonable, intentional, willful, and wanton, and done in gross disregard of Plaintiff DiLallo's rights.

29

EXHIBIT "A"

263. Defendant's unlawful lawful searches of Plaintiff DiLallo amounting to degrading sexual abuse in violation of Plaintiff DiLallo's bodily integrity and right to personal security, and the ongoing threat of further such violations, proximately caused Plaintiff DiLallo to suffer damages.

264. These damages include lost liberty and psychological and emotional distress.

**COUNT X: NEGLIGENT OPERATION OR MAINTENANCE OF A PUBLIC FACILITY**
**(Against all Defendants)**

265. Plaintiff DiLallo adopts and incorporates the preceding paragraphs as though fully set forth herein.

266. Defendants owed a duty to Plaintiff DiLallo to protect her health and safety in the operation and maintenance of WNMCF.

267. Defendants breached their duty, as set forth above, by failing to ensure that Plaintiff DiLallo was housed in a facility where she would not be subject to harassment and retaliation by WNMCF employees.

268. The negligent conduct of Defendants constitutes negligent operation or maintenance of a public facility for which immunity is waived pursuant to NMSA 1978, § 41-4-6 as against Defendants, including the State of New Mexico, NMCD, and WNCMF.

269. Defendants failed to ensure inmates like Plaintiff DiLallo could make PREA complaints without fear of retaliation.

270. The negligence of all Defendants caused Plaintiff DiLallo to suffer damages.

**JURY DEMAND**

Plaintiffs Riley and DiLallo respectfully demand a jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Riley and DiLallo seek the following relief:

30

EXHIBIT "A"

A. The award of damages in an amount a jury deems sufficient to compensate Plaintiffs for Defendants' unlawful conduct;

B. Damages for the nature, extent, and duration of Plaintiffs' injuries;

C. Punitive damages in an amount a jury deems sufficient to deter Defendants from engaging in such unlawful conduct and future violations of Plaintiffs' and other incarcerated individuals' constitutional rights;

D. Injunctive relief;

E. Reasonable attorneys' fees and costs incurred in bringing this action, including expert fees, pursuant to 42 U.S.C. § 1988; and

F. Such other and further relief as the Court deems just.

Respectfully Submitted,

**/s/ Lalita Moskowitz**
Lalita Moskowitz
Leon Howard
ACLU of New Mexico
P.O. Box 566
Albuquerque, NM 87103
P: (505) 266-5915 ext. 1015 & 1008
F: (505) 266-5916
lmoskowitz@aclu-nm.org
lhoward@aclu-nm.org

&

Taylor E. Smith
GARRETT LAW
Cooperating Attorney for the ACLU-NM
Foundation
6739 Academy Rd. NE Ste. 350
Albuquerque, NM 87109
(T): (505) 242-1920
Taylor.garrettlaw@gmail.com

*Attorneys for Plaintiffs*

31

EXHIBIT "A"

| SUMMONS | |
|---|---|
| District Court: First Judicial<br>Santa Fe County, New Mexico<br>Court Address:   225 Montezuma Ave.<br>                             Santa Fe, NM 87501<br>Court Telephone Number: (505) 455-8250 | Civil Case Number:   D-101-CV-2020-01303<br><br>Judge: Honorable Matthew Justin Wilson |
| SNOOKY RILEY and JENNIFER DILALLO,<br><br>Plaintiffs,<br><br>vs.<br><br>MARY SPANGLER, in her individual capacity; JASON BACA, in his individual capacity; CHRISTY VIGIL, in her individual capacity; DENISE GONZALES, in her individual capacity; VICTOR ALDAZ in his individual capacity; VINCENT VIGIL, in his individual capacity; LEON MARTINEZ, in his individual capacity; JOHN GAY, in his individual capacity; ALISHA TAFOYA LUCERO, in her individual capacity; STATE OF NEW MEXICO and its subsidiary entities; NEW MEXICO CORRECTIONS DEPT.; and WESTERN NEW MEXICO CORRECTIONAL FACILITY,<br><br>Defendants. | To Defendant:<br><br>JASON BACA<br>c/o Hinkle Shanor LLP<br>P.O. Box 10<br>Roswell, New Mexico 88202<br>ssshanor@hinklelawfirm.com |

**TO THE ABOVE NAMED DEFENDANT(S):** Take notice that

1. A lawsuit has been filed against you. A copy of the lawsuit is attached. The Court issued this Summons.

2. You must respond to this lawsuit in writing. You must file your written response with the Court no later than thirty (30) days from the date you are served with this Summons. (The date you are considered served with the Summons is determined by Rule 1-004 NMRA) The Court's address is listed above.

3. You must file (in person or by mail) your written response with the Court. When you file your response, you must give or mail a copy to the person who signed the lawsuit.

4. If you do not respond in writing, the Court may enter judgment against you as requested in the lawsuit.

5. You are entitled to a jury trial in most types of lawsuits. To ask for a jury trial, you must request one in writing and pay a jury fee.

6. If you need an interpreter, you must ask for one in writing.

7. You may wish to consult a lawyer. You may contact the State Bar of New Mexico for help finding a lawyer at www.nmbar.org; 1-800-876-6227; or 1-505-797-6066.

Dated at _____Santa Fe_____, New Mexico, this _14_ day of September,

20_20_ .
KATHLEEN VIGIL
CLERK OF COURT

By: _____
      Deputy

Attorneys for Plaintiff

*/s/ Lalita Moskowitz*
Lalita Moskowitz
Leon Howard
ACLU of New Mexico
P.O. Box 566
Albuquerque, NM 87103-0566
P: (505) 266-5915 ext. 1015 & 1008
F: (505) 266-5916
lmoskowitz@aclu-nm.org
lhoward@aclu-nm.org

&

Taylor E. Smith
GARRETT LAW
Cooperating Attorney for the ACLU-NM
Foundation
6739 Academy Rd. NE Ste. 350
Albuquerque, NM 87109
(T): (505) 242-1920
Taylor.garrettlaw@gmail.com

*Attorneys for Plaintiffs*

THIS SUMMONS IS ISSUED PURSUANT TO RULE 1-004 NMRA OF THE NEW MEXICO
RULES OF CIVIL PROCEDURE FOR DISTRICT COURTS.

EXHIBIT "A"

**RETURN₁**

STATE OF NEW MEXICO )
                                        )ss
COUNTY OF _____ )

I, being duly sworn, on oath, state that I am over the age of eighteen (18) years and not a party to this lawsuit, and that I served this summons in _____ county on the _____ day of _____, _____, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

(**check one box and fill in appropriate blanks**)

[ ] to the defendant _____ (*used when defendant accepts a copy of summons and complaint or refuses to accept the summons and complaint*)

[ ] to the defendant by [mail] [courier service] as provided by Rule 1-004 NMRA (*used when service is by mail or commercial courier service*).
After attempting to serve the summons and complaint on the defendant by personal service or by mail or commercial courier service, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

[ ] to _____, a person over fifteen (15) years of age and residing at the usual place of abode of defendant _____, (*used when the defendant is not presently at place of abode*) and by mailing by first class mail to the defendant at _____ (*insert defendant's last known mailing address*) a copy of the summons and complaint.

[ ] to _____, the person apparently in charge at the actual place of business or employment of the defendant and by mailing by first class mail to the defendant at _____ (*insert defendant's business address*) and by mailing the summons and complaint by first class mail to the defendant at _____ (*insert defendant's last known mailing address*).

[ ] to _____, an agent authorized to receive service of process for defendant _____.

[ ] to _____, [parent] [guardian] [custodian] [conservator] [guardian ad litem] of defendant _____ (*used when defendant is a minor or an incompetent person*).

[ ] to _____ (*name of person*), _____, (*title of person authorized to receive service. Use this alternative when the defendant is a corporation or an association subject to a suit under a common name, a land grant board of trustees, the State of New Mexico or any political subdivision*).

EXHIBIT "A"

Fees:   _____

_____
Signature of person making service

_____
Title (*if any*)

Subscribed and sworn to before me this _____ day of _____, _____.2

_____
Judge, notary or other officer
authorized to administer oaths

_____
Official title

## USE NOTE

    1. Unless otherwise ordered by the court, this return is not to be filed with the court prior to service of the summons and complaint on the defendant.

    2. If service is made by the sheriff or a deputy sheriff of a New Mexico county, the signature of the sheriff or deputy sheriff need not be notarized.

[Adopted effective August 1, 1988; as amended by Supreme Court Order 05-8300-01, effective March 1, 2005; by Supreme Court Order 07-8300-16, effective August 1, 2007; by Supreme Court Order No. 12-8300-026, effective for all cases filed or pending on or after January 7, 2013; as amended by Supreme Court Order No. 13-8300-022, effective for all cases pending or filed on or after December 31, 2013; as amended by Supreme Court Order No. 14-8300-017, effective for all cases pending or filed on or after December 31, 2014.]

EXHIBIT "A"

| SUMMONS | |
|---|---|
| District Court: First Judicial Santa Fe County, New Mexico Court Address:  225 Montezuma Ave.                          Santa Fe, NM 87501 Court Telephone Number: (505) 455-8250 | Civil Case Number:  D-101-CV-2020-01303  Judge: Honorable Matthew Justin Wilson |
| SNOOKY RILEY and JENNIFER DILALLO,  Plaintiffs,  vs.  MARY SPANGLER, in her individual capacity; JASON BACA, in his individual capacity; CHRISTY VIGIL, in her individual capacity; DENISE GONZALES, in her individual capacity; VICTOR ALDAZ in his individual capacity; VINCENT VIGIL, in his individual capacity; LEON MARTINEZ, in his individual capacity; JOHN GAY, in his individual capacity; ALISHA TAFOYA LUCERO, in her individual capacity; STATE OF NEW MEXICO and its subsidiary entities; NEW MEXICO CORRECTIONS DEPT.; and WESTERN NEW MEXICO CORRECTIONAL FACILITY,  Defendants. | To Defendant:  CHRISTY VIGIL c/o Hinkle Shanor LLP P.O. Box 10 Roswell, New Mexico 88202 ssshanor@hinklelawfirm.com |

**TO THE ABOVE NAMED DEFENDANT(S):** Take notice that

    1. A lawsuit has been filed against you. A copy of the lawsuit is attached. The Court issued this Summons.

    2. You must respond to this lawsuit in writing. You must file your written response with the Court no later than thirty (30) days from the date you are served with this Summons. (The date you are considered served with the Summons is determined by Rule 1-004 NMRA) The Court's address is listed above.

    3. You must file (in person or by mail) your written response with the Court. When you file your response, you must give or mail a copy to the person who signed the lawsuit.

    4. If you do not respond in writing, the Court may enter judgment against you as requested in the lawsuit.

    5. You are entitled to a jury trial in most types of lawsuits. To ask for a jury trial, you must request one in writing and pay a jury fee.

    6. If you need an interpreter, you must ask for one in writing.

    7. You may wish to consult a lawyer. You may contact the State Bar of New Mexico for help finding a lawyer at www.nmbar.org; 1-800-876-6227; or 1-505-797-6066.

    Dated at _____Santa Fe_____, New Mexico, this _14_ day of _September_,

EXHIBIT "A"

20<u>20</u>.

KATHLEEN VIGIL
CLERK OF COURT

By: _____
Deputy

Attorneys for Plaintiff

*/s/ Lalita Moskowitz*
Lalita Moskowitz
Leon Howard
ACLU of New Mexico
P.O. Box 566
Albuquerque, NM 87103-0566
P: (505) 266-5915 ext. 1015 & 1008
F: (505) 266-5916
lmoskowitz@aclu-nm.org
lhoward@aclu-nm.org

&

Taylor E. Smith
GARRETT LAW
Cooperating Attorney for the ACLU-NM
Foundation
6739 Academy Rd. NE Ste. 350
Albuquerque, NM 87109
(T): (505) 242-1920
Taylor.garrettlaw@gmail.com

*Attorneys for Plaintiffs*

THIS SUMMONS IS ISSUED PURSUANT TO RULE 1-004 NMRA OF THE NEW MEXICO
RULES OF CIVIL PROCEDURE FOR DISTRICT COURTS.

EXHIBIT "A"

**RETURN₁**

STATE OF NEW MEXICO )
                    )ss
COUNTY OF _____ )

I, being duly sworn, on oath, state that I am over the age of eighteen (18) years and not a party to this lawsuit, and that I served this summons in _____ county on the _____ day of _____, _____, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

(*check one box and fill in appropriate blanks*)

[ ] to the defendant _____ (*used when defendant accepts a copy of summons and complaint or refuses to accept the summons and complaint*)

[ ] to the defendant by [mail] [courier service] as provided by Rule 1-004 NMRA (*used when service is by mail or commercial courier service*).
After attempting to serve the summons and complaint on the defendant by personal service or by mail or commercial courier service, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

[ ] to _____, a person over fifteen (15) years of age and residing at the usual place of abode of defendant _____, (*used when the defendant is not presently at place of abode*) and by mailing by first class mail to the defendant at _____ (*insert defendant's last known mailing address*) a copy of the summons and complaint.

[ ] to _____, the person apparently in charge at the actual place of business or employment of the defendant and by mailing by first class mail to the defendant at _____ (*insert defendant's business address*) and by mailing the summons and complaint by first class mail to the defendant at _____ (*insert defendant's last known mailing address*).

[ ] to _____, an agent authorized to receive service of process for defendant _____.

[ ] to _____, [parent] [guardian] [custodian] [conservator] [guardian ad litem] of defendant _____ (*used when defendant is a minor or an incompetent person*).

[ ] to _____ (*name of person*), _____, (*title of person authorized to receive service. Use this alternative when the defendant is a corporation or an association subject to a suit under a common name, a land grant board of trustees, the State of New Mexico or any political subdivision*).

Fees: _____

_____
Signature of person making service

_____
Title (*if any*)

Subscribed and sworn to before me this _____ day of _____, _____.₂

_____
Judge, notary or other officer
authorized to administer oaths

_____
Official title

## USE NOTE

    1. Unless otherwise ordered by the court, this return is not to be filed with the court prior to service of the summons and complaint on the defendant.

    2. If service is made by the sheriff or a deputy sheriff of a New Mexico county, the signature of the sheriff or deputy sheriff need not be notarized.

[Adopted effective August 1, 1988; as amended by Supreme Court Order 05-8300-01, effective March 1, 2005; by Supreme Court Order 07-8300-16, effective August 1, 2007; by Supreme Court Order No. 12-8300-026, effective for all cases filed or pending on or after January 7, 2013; as amended by Supreme Court Order No. 13-8300-022, effective for all cases pending or filed on or after December 31, 2013; as amended by Supreme Court Order No. 14-8300-017, effective for all cases pending or filed on or after December 31, 2014.]

EXHIBIT "A"

| **SUMMONS** ||
|---|---|
| District Court: First Judicial Santa Fe County, New Mexico Court Address:   225 Montezuma Ave.                         Santa Fe, NM 87501 Court Telephone Number: (505) 455-8250 | Civil Case Number:   D-101-CV-2020-01303  Judge: Honorable Matthew Justin Wilson |
| SNOOKY RILEY and JENNIFER DILALLO,  Plaintiffs,  vs.  MARY SPANGLER, in her individual capacity; JASON BACA, in his individual capacity; CHRISTY VIGIL, in her individual capacity; DENISE GONZALES, in her individual capacity; VICTOR ALDAZ in his individual capacity; VINCENT VIGIL, in his individual capacity; LEON MARTINEZ, in his individual capacity; JOHN GAY, in his individual capacity; ALISHA TAFOYA LUCERO, in her individual capacity; STATE OF NEW MEXICO and its subsidiary entities; NEW MEXICO CORRECTIONS DEPT.; and WESTERN NEW MEXICO CORRECTIONAL FACILITY,  Defendants. | To Defendant:  LEON MARTINEZ c/o Hinkle Shanor LLP P.O. Box 10 Roswell, New Mexico 88202 ssshanor@hinklelawfirm.com |

**TO THE ABOVE NAMED DEFENDANT(S):** Take notice that

    1. A lawsuit has been filed against you. A copy of the lawsuit is attached. The Court issued this Summons.

    2. You must respond to this lawsuit in writing. You must file your written response with the Court no later than thirty (30) days from the date you are served with this Summons. (The date you are considered served with the Summons is determined by Rule 1-004 NMRA) The Court's address is listed above.

    3. You must file (in person or by mail) your written response with the Court. When you file your response, you must give or mail a copy to the person who signed the lawsuit.

    4. If you do not respond in writing, the Court may enter judgment against you as requested in the lawsuit.

    5. You are entitled to a jury trial in most types of lawsuits. To ask for a jury trial, you must request one in writing and pay a jury fee.

    6. If you need an interpreter, you must ask for one in writing.

    7. You may wish to consult a lawyer. You may contact the State Bar of New Mexico for help finding a lawyer at www.nmbar.org; 1-800-876-6227; or 1-505-797-6066.

    Dated at _____Santa Fe_____, New Mexico, this _14_ day of _September_,

2020 .
KATHLEEN VIGIL
CLERK OF COURT

By: _____
    Deputy

Attorneys for Plaintiff

*/s/ Lalita Moskowitz*
Lalita Moskowitz
Leon Howard
ACLU of New Mexico
P.O. Box 566
Albuquerque, NM 87103-0566
P: (505) 266-5915 ext. 1015 & 1008
F: (505) 266-5916
lmoskowitz@aclu-nm.org
lhoward@aclu-nm.org

&

Taylor E. Smith
GARRETT LAW
Cooperating Attorney for the ACLU-NM
Foundation
6739 Academy Rd. NE Ste. 350
Albuquerque, NM 87109
(T): (505) 242-1920
Taylor.garrettlaw@gmail.com

*Attorneys for Plaintiffs*

THIS SUMMONS IS ISSUED PURSUANT TO RULE 1-004 NMRA OF THE NEW MEXICO
RULES OF CIVIL PROCEDURE FOR DISTRICT COURTS.

EXHIBIT "A"

**RETURN₁**

STATE OF NEW MEXICO )
                                     )ss
COUNTY OF _____ )

I, being duly sworn, on oath, state that I am over the age of eighteen (18) years and not a party to this lawsuit, and that I served this summons in _____ county on the _____ day of _____, _____, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

(***check one box and fill in appropriate blanks***)

[ ] to the defendant _____ (*used when defendant accepts a copy of summons and complaint or refuses to accept the summons and complaint*)

[ ] to the defendant by [mail] [courier service] as provided by Rule 1-004 NMRA (*used when service is by mail or commercial courier service*).
After attempting to serve the summons and complaint on the defendant by personal service or by mail or commercial courier service, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

[ ] to _____, a person over fifteen (15) years of age and residing at the usual place of abode of defendant _____, (*used when the defendant is not presently at place of abode*) and by mailing by first class mail to the defendant at _____ (*insert defendant's last known mailing address*) a copy of the summons and complaint.

[ ] to _____, the person apparently in charge at the actual place of business or employment of the defendant and by mailing by first class mail to the defendant at _____ (*insert defendant's business address*) and by mailing the summons and complaint by first class mail to the defendant at _____ (*insert defendant's last known mailing address*).

[ ] to _____, an agent authorized to receive service of process for defendant _____.

[ ] to _____, [parent] [guardian] [custodian] [conservator] [guardian ad litem] of defendant _____ (*used when defendant is a minor or an incompetent person*).

[ ] to _____ (*name of person*), _____, (*title of person authorized to receive service. Use this alternative when the defendant is a corporation or an association subject to a suit under a common name, a land grant board of trustees, the State of New Mexico or any political subdivision*).

EXHIBIT "A"

Fees:   _____

_____
Signature of person making service

_____
Title (*if any*)

Subscribed and sworn to before me this _____ day of _____, _____.2

_____
Judge, notary or other officer
authorized to administer oaths

_____
Official title

USE NOTE

1. Unless otherwise ordered by the court, this return is not to be filed with the court prior to service of the summons and complaint on the defendant.

2. If service is made by the sheriff or a deputy sheriff of a New Mexico county, the signature of the sheriff or deputy sheriff need not be notarized.

[Adopted effective August 1, 1988; as amended by Supreme Court Order 05-8300-01, effective March 1, 2005; by Supreme Court Order 07-8300-16, effective August 1, 2007; by Supreme Court Order No. 12-8300-026, effective for all cases filed or pending on or after January 7, 2013; as amended by Supreme Court Order No. 13-8300-022, effective for all cases pending or filed on or after December 31, 2013; as amended by Supreme Court Order No. 14-8300-017, effective for all cases pending or filed on or after December 31, 2014.]

EXHIBIT "A"